IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ar'Jah Koger,<br><br>Plaintiff,<br><br>v.<br><br>THI of South Carolina at Charleston, LLC<br>D.B.A. Riverside Health and Rehab,<br>Fundamental Administrative Services LLC<br>D.B.A. Fundamental,<br><br>Defendant. | CIVIL ACTION NO: 2:20-cv-04279-DCN<br><br>COMPLAINT<br>(Jury Trial Requested) |

Plaintiff Ar'Jah Koger, ("Plaintiff or Ms. Koger") individually and on behalf of all others similarly situated, by way of this Complaint, brings the below claim against Defendants THI of South Carolina at Charleston, LLC ("THI") doing business as Riverside Health and Rehab ("Riverside"), and Fundamental Administrative Services LLC doing business as Fundamental. ("Fundamental")

## NATURE OF CLAIMS

1. Plaintiff alleges her termination was retaliatory and in violation of the Families First Coronavirus Response Act, ("FFCRA") 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201 and Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), et seq, ("FLSA").

## PARTIES, JURISDICTION AND VENUE

2. Ms. Koger is a citizen and a resident of Colleton County, South Carolina.

1

3. Defendant, THI, is a for-profit limited liability Delaware company, organized and existing under the laws of South Carolina, and is registered with the South Carolina Secretary of State.

4. Defendant, Fundamental is a for-profit limited liability Delaware company doing business in South Carolina.

5. Defendant, THI employs persons such as Plaintiff and other similarly situated employees to work on their behalf in providing labor for their benefit. Defendant is within the personal jurisdiction and venue of this Court.

6. Defendant, Fundamental employs persons such as Plaintiff and other similarly situated employees to work on their behalf in providing labor for their benefit. Defendant is within the personal jurisdiction and venue of this Court.

7. Venue is proper in this District because the Defendants have conducted substantial, continuous and systematic commercial activities in Charleston County. Additionally, the unlawful labor practices and policies giving rise to Plaintiff's claims were committed in the Charleston Division of this Court.

8. Based upon information and belief, the annual gross sales volume of Defendants' business was more than $500,000.00 per year at all times material hereto.

9. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216 (b).

10. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims, which are brought pursuant to the common law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein

**FACTS**

11. Defendant, THI is a national health care company that operates skilled nursing facilities, specialty hospitals, and outpatient rehabilitation clinics. THI owns and operates Riverside which is located at 2375 Baker Hospital Blvd in Charleston, SC 29405.

12. Upon information and belief Defendant, Fundamental is the parent company of THI. Defendant Fundamental owns and operates Riverside as well as numerous other facilities. https://www.fundltc.com/Healthcare%20Facility%20Locator/Facility_Locator.aspx

13. Defendant, THI owns and operates, Riverside and regularly exercised the authority to hire and fire employees, determine the work schedules of employees, set the rate of pay of employees, and control the finances and operations of such business. By virtue of such control and authority, THI was the employer of Plaintiff as such term is defined by the Act. 29 U.S.C. §201 et seq.

14. Defendant, Fundamental owns and operates, Riverside and regularly exercised the authority to hire and fire employees, determine the work schedules of employees, set the rate of pay of employees, and control the finances and operations of such business. By virtue of such control and authority, Fundamental was the employer of Plaintiff as such term is defined by the Act. 29 U.S.C. §201 et seq.

15. Riverside is a 160-bed skilled nursing facility that houses a specialty CardioPulmonary Pavilion, as well as provides short-term rehabilitation, skilled nursing care, long-term care, hospice care, and respite care. http://riversidehealthrehabsc.com/about.html

16. Ms. Koger was a certified nursing assistant. (CNA) She was employed by the Defendants from April 2019 until her retaliatory termination on July 14, 2020 at the Riverside facility.

17. Ms. Koger was paid an hourly rate of $13.00. Her primary duties were to assist the residents with daily living activities such as eating, bathing, grooming, dressing and walking.

18. Upon information and belief, prior to June of 2020, Riverside had managed to stay COVID free.

19. Ms. Kroger took precautions not to place the residents in care at risk. Ms. Koger had been tested once through work and another time on her own. Both tests were negative.

20. On or about June 14, 2020 a nurse at Riverside tested positive for COVID. Shortly after that several residents and staff tested positive for COVID.

21. On Wednesday, June 24, 2020, Ms. Koger was scheduled to work a double shift because the facility was short staffed. She was scheduled to work Wednesday, June 24th going into Thursday, June 25th from 11 p.m. to 7 a.m. After that shift she was scheduled to work 7 a.m. to 3:00 p.m. on Thursday, June 25th.

22. At approximately 3:00 a.m. on Thursday, June 25th, Plaintiff asked the nurse in-charge if she could go home because she had a fever. Ms. Koger had taken her own temperature using a digital thermometer and she had a fever of 102.

23. The nurse on duty contacted the administrator of the facility, Jerrolyn Small (Ms. Smalls) and informed her that Ms. Kroger had fever and was asking to go home.

24. Ms. Small instructed the nurse on duty not to let Ms. Kroger go home, until she arrived at the facility because she wanted to speak with Ms. Kroger.

25. When Ms. Small arrived, she advised Ms. Koger that the digital thermometer she had used was broken. Ms. Smalls retrieved the digital thermometer kept at the front desk that was used to check the temperatures of staff and visitors before they entered the facility. Ms. Smalls used that thermometer to take Ms. Kroger's temperature.

5

26. Ms. Smalls advised Ms. Koger that her temperature was in the normal range and she could not go home.  Ms. Kroger was unable to see what her temperature was and Ms. Small did not tell Ms. Kroger what her temperature was. Ms. Small advised Ms. Koger to work the remainder of that shift as well as the next shift.

27. Even though she felt sick, Ms. Koger stayed and worked per Ms. Smalls instructions because she was afraid she would be terminated if she went home.

28. Ms. Kroger had the next few days off. Ms. Koger continued to feel sick. On Sunday, June 28, 2020, Ms. Koger lost her sense of taste and smell. She was also experiencing shortness of breath, fever, headache, coughing and diarrhea.

29. On Monday, January 29, 2020, Ms. Koger went to Lowcountry Urgent Care in Walterboro to get tested. Ms. Koger called into work and advised them she was sick and she was waiting for test results.

30. On Thursday, July 2, 2020 Lowcountry Urgent care called Plaintiff and told her she tested positive for COVID and she should self-quarantine the next 14 days. Ms. Koger advised work that she had tested positive.

31. While she was out-sick several of Plaintiff's co-workers texted her about residents that had died. Upon information and belief many of these deaths were COVID related.

32. On July 14, 2020, Ms. Smalls, texted Plaintiff, the following: "Hello, you are due back at work according to DHEC guidelines.  Your 10/14 days have expired.  Please call me we are placing you back on the schedule." A few minutes later she texted Plaintiff, "You are scheduled to work from 7:00 a.m. to 7:00 p.m. tomorrow."

33. Plaintiff was sleeping when she received Ms. Small's texts, as she was still not feeling well. When Plaintiff woke-up, she called Ms. Smalls and told her she was still experiencing shortness of breath, headache and diarrhea and she could not return to work.

34. Because Ms. Koger had bad reception at her home, the call disconnected, through no fault of Ms. Koger's. Ms. Smalls texted, "Not sure if you was (sic) intending to hang up. Rudeness is not an option. You will stay in thd (sic) schedule and be a NCNS" (no call, no show)

35. Ms. Koger called her back and explained to Ms. Smalls she lost reception and she did not hang-up. Ms. Koger again told Ms. Smalls she was still having COVID symptoms and did not feel well enough to work. Moreover, she was worried she might endanger the residents because she was still having COVID symptoms.

36. Ms. Small instructed her to take over the counter medicine for the diarrhea and be at work in the morning. Furthermore, she advised Ms. Kroger if she was not at work the following day, she would be considered a no call, no show and she would be terminated.

37. Ms. Koger told Ms. Smalls she was not going to come into work because she was not going to put the residents in jeopardy. Ms. Smalls responded by telling Ms. Kroger she was terminated and hung-up.

38. Ms. Smalls then texted, "We have placed you as resigned without notice. Thank You."

39. After terminating Ms. Kroger, the Defendants falsely reported to SC Department of Employment and Workforce (SCDEW) that Ms. Kroger voluntarily quit, so Plaintiff would not receive unemployment benefits.

40. Ms. Koger's termination was in violation of FFCRA which states that it is unlawful for any employer to discharge, discipline, or in any other manner discriminate against

6

any employee who is unable to work because they are experiencing symptoms of COVID-19 and seeking a medical diagnosis.

41. Ms. Koger engaged in protected activity under the FLSA's anti-retaliation provision when she advised Ms. Small she would not return to work because she was still experiencing COVID-19 symptoms.

42. The Defendants engaged in retaliatory conduct by terminating Plaintiff because she refused to risk the health of the residents she cared for.

43. The Defendants knowingly engaged in conduct that posed a substantial risk of transmission of the disease to their patients and staff.

44. The Defendants acted with malice and reckless disregard for the vulnerable population they are entrusted to care for.

45. The Defendants violated federal law by terminating Ms. Kroger.

46. Ms. Kroger is seeking emotional damages because the Defendants' actions have caused her to suffer stress and anxiety. Since her retaliatory termination, she has been unable to find employment.

### FOR A FIRST CAUSE OF ACTION
### (FFCRA –Retaliation)
### (Individual Action)

47. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

48. When she requested to leave work because she was experience COVID symptoms, Plaintiff had been employed for at least 30 calendar days by the Defendant.

49. Plaintiff tested positive for COVID-19.

50. Defendants order Plaintiff to return to work or be terminated, when Plaintiff was still experiencing COVID symptoms.

51. Plaintiff advised Defendants she tested positive and that she was still experiencing COVID symptoms, notwithstanding this, Defendants terminated Plaintiff.

52. The FFCRA states that it is unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who takes leave in accordance with the Act.

53. An employer who willfully violates Section 5104 is also in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. 215(a)(3)) and is subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C. 216; 217) with respect to such violation.

54. The Defendants terminated Plaintiff because she would return to work while she was still experiencing COVID symptoms.

55. Defendants willfully, intentionally, and unlawfully retaliated against Plaintiff because she engaged in protected conducted pursuant to FFCRA. Defendants retaliated against Plaintiff because of she engaged in protected conduct.

56. Defendants are liable for the acts of individual supervisors, managerial employees, and/or the acts of their agents.

57. Defendants have willfully violated the anti-retaliation provisions of the FFCRA and FLSA, which prohibit "any person" from "discharging or in any other manner discriminating against an employee because that employee has engaged in protected conduct." 29 U.S.C. § 215(a)(3).

58. The Defendants' actions of terminating Ms. Kroger for following the advice of medical professional was reckless, willful, and malicious.

59.     Because of Defendants' willful violations of the FFCRA and FLSA, Plaintiff is entitled to recover from Defendants for front-pay, back-pay, emotional damages, reasonable attorneys' fees and costs/disbursements of prosecuting this case, plus liquidated damages, and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, seeks judgment against the Defendants as follows:

a. Declaratory Judgment against Defendants that Plaintiff's termination was retaliatory and violated the FLSA and FFRCA;

b. Declaratory Judgement that the Defendants' violation of the FLSA was willful.

c. Injunctive relief requiring Defendants to comply with FLSA and FFRCA.

d. A Court Order requiring Defendants to preserve employment records, including payroll, attendance and time records during the pendency of this action.

e. Injunctive relief requiring the Defendants to reinstate Plaintiff to her previous position.

f. An award of liquidated damages in an amount equal to the award of compensatory damages pursuant to 29 U.S.C. § 216(b);

g. Judgment against the Defendants for emotional and compensatory damages resulting from her retaliatory termination;

h. An award of the reasonable attorneys' fees and costs incurred by Plaintiff;

i. All such further relief as the Court deems just and equitable.

## JURY DEMANDED

Plaintiff hereby demand a trial by jury.

Respectfully submitted,

s/ Marybeth Mullaney
Marybeth Mullaney (Fed. ID No. 11162)

9

Mullaney Law
652 Rutledge Ave, Suite A
Charleston, South Carolina 29403
Phone (843) 588-5587
marybeth@mullaneylaw.net
*Attorney for Plaintiff*

December 10, 2020
Charleston, South Carolina.

10